UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                              :
CLAREX LIMITED and BETAX LIMITED,                             :
                                                              :        12 Civ. 7908 (PAE)
                                    Plaintiffs,               :
                  -v-                                         :        OPINION & ORDER
                                                              :
NATIXIS SECURITIES AMERICA LLC et al.,                        :
                                                              :
                                    Defendants.               :
                                                              :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs Clarex Limited ("Clarex") and Betax Limited ("Betax") (collectively, "plaintiffs"), companies operating in Nassau, Bahamas, bring this action, alleging that defendants Natixis Securities America LLC and its predecessors (collectively, "Natixis"), Delaware corporations operating in New York, New York, violated their contractual and fiduciary duties. Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike damages pursuant to Rule 12(f). For the reasons that follow, the motion is granted in part and denied in part.

I.    **Background**[1]

    **A. Pre-Lawsuit Events**

      Sometime before November 1, 2002, plaintiffs purchased $46 million in Nigerian bonds from Natixis. *See* Complaint ("Compl.") ¶ 13. Pursuant to industry practice at the time, one "warrant" was supposed to accompany each $1,000 worth of issued bonds. *Id.* ¶ 6. These warrants were guaranteed by the Government of Nigeria and provided the holder with the

---

[1] The facts which form the basis of this Opinion are drawn from the Complaint, Dkt. 1, and from affidavits submitted with the parties' briefs. On a motion to dismiss, the Court accepts all factual allegations in the Complaint as true.

prospect of semi-annual payments based on increases in the price of oil.  *Id.* ¶ 7.  As of October 17, 2012, Nigeria had paid out, to the holders, a total of $10,695,996.46 in payment rights on the warrants.  *Id.* ¶ 31.  As of the same date, the warrants had a market value of $8,924,000.  *Id.*

In August 2007, before bringing this lawsuit, plaintiffs assigned all claims in connection with the purchase of the warrants to an affiliated company, Landsdowne Investments Inc. ("Landsdowne").  *Id.* ¶ 21.  On August 21, 2007, Landsdowne filed a complaint against Natixis in this district, alleging breach of contract and negligence in connection with Natixis's alleged failure to deliver the warrants to Landsdowne.  *Id.* ¶ 22.  On January 15, 2008, Landsdowne voluntarily dismissed that lawsuit.  *Id.* ¶ 23.

On January 30, 2012, plaintiffs filed suit against Natixis, alleging that Natixis's failure to deliver the warrants constituted a breach of contract, a breach of the duty of good faith and fair dealing, and negligence.  *Id.* ¶ 27.[2]  On April 2, 2012, Natixis filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *Id.* ¶ 28.  On October 12, 2012, the Court dismissed plaintiffs' complaint without prejudice, holding that, because Landsdowne had owned the bonds until April 12, 2012, plaintiffs lacked standing to bring the lawsuit as of the date it was brought.  *See Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 722 (PAE), 2012 WL 4849146 (S.D.N.Y. Oct. 12, 2012).

### B.  The Current Lawsuit and the Motion to Dismiss

On October 24, 2012, plaintiffs filed the instant lawsuit.  Dkt. 1.  The three causes of action in this Complaint are, again, breach of contract, breach of the duty of good faith and fair dealing, and negligence.

---

[2] This lawsuit was timely, because Clarex, Betax, and Natixis had entered into a series of 13 tolling agreements covering August 2007 through January 2012.  *Id.* ¶ 24; Declaration of Eric R. Levine ("Levine Decl.") Ex. F; Declaration of Iris P. Sherman ("Sherman Decl.") Exs. B–C.

On January 7, 2013, Natixis filed a motion to dismiss the Complaint, pursuant to Rule 12(b)(6). Dkt. 9–11. On January 28, 2013, plaintiffs filed an opposition brief. Dkt. 14–16. On February 7, 2013, Natixis filed a reply. Dkt. 19–20.

Natixis moves to dismiss the Complaint on four grounds: that (1) Natixis's relationship with plaintiffs was that of a broker and it did not breach any duties of a broker, Def. Br. 8–17; (2) plaintiffs' claims for breach of contract and breach of good faith are duplicative, *id.* at 17–19; and (3) plaintiffs' claims for breach of contract and negligence are duplicative, *id.* at 19–21; (4) plaintiffs' negligence claim and a portion of their contract claims are barred by the statute of limitations, *id.* at 21–22. Natixis also moves to strike plaintiffs' demand for damages, pursuant to Rule 12(f), to the extent these damages exceed the market value of the warrants at the time of the alleged breach. *Id.* at 22–25.

## II.   Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, in considering a motion to dismiss, a district court "must accept as true all well-pleaded factual allegations in the complaint, and 'draw[] all inferences in the plaintiff's favor.'" *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006); *see also Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) ("We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint is properly dismissed, where, as a

matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## III. Discussion

### A. Contract Claim

To state a claim for breach of contract under New York law,[3] a plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

The Complaint adequately alleges these elements. As to the existence of a contract requiring delivery of the warrants to plaintiffs, plaintiffs allege that they placed an order with Natixis "to purchase a total of $46,000,000 in Bonds and 46,000 Warrants." Compl. ¶ 13. They allege that Natixis, in turn, confirmed in writing that it would sell that amount of bonds and warrants to plaintiffs. *Id.* ¶ 14. Further, the Customer Agreements between plaintiffs and Natixis each state, in a section entitled, "Delivery of Securities," the following: "Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account." *See*

---

[3] The customer agreement between Natixis and Betax includes a choice-of-law clause to the effect that New York law applies. Levine Decl. Ex. D § 18. The customer agreement between Natixis and Clarex, on the other hand, has left a blank where the chosen state law should have been printed. However, the Court applies New York law for both plaintiffs, because all parties apply New York law in their submissions: Where "[t]he parties' briefs assume that New York law controls . . . such 'implied consent . . . is sufficient to establish choice of law.'" *Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011) (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

4

Levine Decl. Ex. D ¶ 5; *id.* Ex. E ¶ 5.[4]  As to performance by the parties, the Complaint alleges, plaintiffs "paid in full the agreed consideration," but Natixis failed to deliver the warrants. Compl. ¶¶ 15–16.  Finally, as to damages, the Complaint alleges that plaintiffs have been damaged, both in that they have been deprived of the current market value of the warrants and the amounts paid to date on the warrants.  *Id.* ¶ 36.

Natixis counters with several arguments.  First, Natixis argues, plaintiffs did not comply with the terms of the contract, *viz.* that plaintiffs did not perform.  Specifically, it argues that plaintiffs have foregone their right to recover for the undelivered warrants, because, under the Customer Agreements, plaintiffs were required, but failed, to object to non-delivery within 10 days.  The Agreements state, in pertinent part:  "Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer."  Levine Decl. Ex. D ¶ 16; *id.* Ex. E ¶ 16.

That argument is unpersuasive.  First, paragraph 16 of the Customer Agreement does not appear to impose a duty to object to the non-delivery of *securities* (*e.g.*, the warrants).  Instead it addresses a different subject altogether: the consequences of a failure by plaintiff to object to the terms of a *confirmation* of a transaction or statement (*e.g.*, the recitation of the price term of a securities transaction).  That is not relevant here:  Plaintiffs intended to purchase the bonds and

---

[4] It is proper to consider these materials, although they were not initially attached to the Complaint, because as the operative contract to plaintiffs' claims, they are incorporated by reference in, and integral to, plaintiffs' claims. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002).  "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565–66 (2d Cir. 2006) (alterations in original) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)), *aff'd*, 552 U.S. 389 (2008).

warrants at the prices listed on the confirmations. The confirmations do not state anything about the warrants as to which plaintiffs were under a 10-day duty to object (*e.g.*, that they would not be delivered). They simply reflect the terms of a trade that plaintiffs intended to carry out. The cases cited by Natixis are thus inapposite. *See* Def. Br. 13–15; Def. Reply. Br. 2. Further, even if paragraph 16 imposed a duty relating to the warrants as opposed to confirmations, that duty, under the terms of the agreement, was triggered only upon receipt of the warrants, and plaintiffs have alleged that they never received such warrants.

Natixis alternatively argues that "the market failed," in such a way as to prevent or excuse Natixis from performing, *i.e.*, making such delivery of the warrants to plaintiffs. Whether Natixis was unable to perform—due to a "market failure" or to other circumstances beyond its control—is, however, a question of fact, which cannot be resolved on a motion to dismiss. In discovery, Natixis is at liberty to seek to establish such facts. *See Inter-Am. Dev. Bank v. Nextg Telecom Ltd.*, 503 F. Supp. 2d 687, 696 (S.D.N.Y. 2007) ("The burden of showing impossibility is on the party seeking to excuse performance."); *see also Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902–03 (1987). The Court notes, however, the absence of legal authority in Natixis's memoranda of law addressing the circumstances under which an inability by Natixis to perform would excuse non-performance, or the implications for the parties to these contracts of any showing that performance was rendered impossible, *e.g.*, by a *force majeure*. In the event that Natixis wishes to defend against plaintiffs' contract claim based on a factual showing of an inability to perform, it is incumbent on Natixis to supply the Court with on-point legal authority, including as to the consequences of such excused non-performance (*e.g.*, whether rescission or some other remedy is appropriate).

Natixis's motion to dismiss plaintiffs' contract claim is, therefore, denied.

6

### B. Negligence Claim

In moving to dismiss plaintiffs' negligence claims, Natixis argues that plaintiffs have failed to allege a relevant duty on Natixis's part, and that to the extent Natixis had any duty, it duplicated its contractual duty to plaintiffs, such that the duplicative negligence claim must be dismissed.

Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). "The existence of a duty is thus a *sine qua non* of a negligence claim: 'In the absence of a duty, as a matter of law, no liability can ensue.'" *Id.* (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)).

As a general rule, "[u]nder New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012). Here, plaintiffs allege that Natixis owed them a duty independent of the contract either (1) from Natixis's role in relation to plaintiffs, which plaintiffs cast as that of a dealer and Natixis casts as that of a broker, or (2) from Natixis's alleged membership in the Emerging Markets Traders Association ("EMTA").

As to the former, plaintiffs allege that in connection with the bond purchase, Natixis was a dealer, and as such had the duty, independent of the contract, "to take adequate and reasonable steps to complete that transaction." Compl. ¶¶ 48, 51. Specifically, plaintiffs contend, Natixis's duties included

> (a) properly advising Plaintiffs concerning their rights to obtain the Warrants, (b) giving proper settlement instructions to Euroclear/Clearstream with respect to Plaintiffs' purchase from Natixis of both the Bonds and their related Warrants, (c) taking adequate steps to reconcile and settle its trading positions with Plaintiffs in order to effect delivery of the Warrants and corresponding payments to Plaintiffs, (d) ensuring that Plaintiffs received all the Warrants corresponding to the Bonds purchased by Plaintiffs, and (e) ensuring that Plaintiffs received all payments of Payment Rights made with respect to the Warrants.

Compl. ¶ 48. Natixis counters that, as to plaintiff, it was no more than a broker on a nondiscretionary account, with very limited duties.

The documents evidencing the parties' relationship—properly considered on the motion to dismiss—squarely and uniformly support Natixis's characterization that it served solely as a broker. The Customer Agreements identify, in their very first sentence, Natixis as "Broker." Levine Decl. Ex. D, at 1; *id.* Ex. E, at 1. There is no contrary language in those agreements. The Agreements do not grant Natixis any trading discretion on plaintiffs' behalf, nor do any of the documents cognizable on a motion to dismiss in any way indicate that Natixis played a role with respect to plaintiffs other than that of a broker on a nondiscretionary account. These documents include confirmations of trades, trading tickets, monthly statements, and correspondence between Natixis and plaintiffs or third-parties as to the warrants.[5]

Under these circumstances, the Complaint's generalized conclusory statement that Natixis in fact functioned as a "broker-dealer" cannot stand. *See Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12 Civ. 847 (RWS), 2012 WL 4335164, at *3 (S.D.N.Y. Sept. 21, 2012) ("If the documents contradict the allegations of a plaintiff's complaint, the documents

---

[5] By order dated May 15, 2013, the Court directed counsel to supply the Court with all documents referenced in the Complaint. Dkt. 29. Although unnecessary for the purpose of resolving this motion, the trade confirmations for the transactions referenced in the Complaint are consistent with this, in that they appear to reflect that Natixis ordered the securities through Euroclear, as opposed to supplying them from its own inventory, as would have been the case were Natixis serving as a dealer.

control and the Court need not accept as true the allegations in the complaint."); *In re Yukos Oil Co. Sec. Litig.*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006) (collecting cases).

With respect to a customer on a nondiscretionary account, a broker has only "narrowly defined duties that begin and end with each transaction." *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1306 (2d Cir. 2002) ("We are aware of no authority for the view that, in the ordinary case, a broker may be held to an open-ended duty of reasonable care, to a nondiscretionary client, that would encompass anything more than limited transaction-by-transaction duties.").[6]  A "fiduciary duty does not arise in the normal course of an arm's-length business transaction," and "a financial products dealer . . . normally does not undertake a fiduciary duty when it acts as a principal in transactions with an institutional counterparty in which no trading discretion is conferred." *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 150 (S.D.N.Y. 2000).

Under these circumstances, plaintiffs' suggestions that Natixis had broad duties to them—including "properly advising Plaintiffs concerning their rights to obtain the Warrants," or following up after the transaction to confirm that "Plaintiffs received all payment of Payment Rights" to which they were later entitled based on the Warrants—does not have a basis in law. Indeed, plaintiffs have not cited case authority to the Court to the effect that the inherent duties of a broker on a nondiscretionary account include any of the duties plaintiffs seek to assign to Natixis.

---

[6] By contrast, a dealer that participates in a bond transaction with its customer—*i.e.*, trading with the customer out of its own account—may owe a broader, fiduciary duty. "Courts in this District have found that a fiduciary relationship could potentially arise in a 'principal-to-principal' arm's-length relationship based upon the degree of trust that exists in that relationship." *Lehman Bros. Commercial Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 151 (S.D.N.Y. 2000) (collecting cases).

Of these asserted duties, the Court assumes *arguendo* that the inherent duties of a broker include the duty to deliver to the customer the securities that the broker assisted it in purchasing in each particular transaction (here, the bonds and warrants).  But, because that duty is already set out in the Customer Agreement, plaintiffs' negligence claim is duplicative of their contract claim, and must be dismissed.  "It is settled under New York law that a tort claim will not arise 'where plaintiff is essentially seeking enforcement of the bargain.'"  *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552 (1992)); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 487 (S.D.N.Y. 2010) ("[T]ort and contract claims can coexist in only limited circumstances.").  And "'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.  This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.'"  *Kramer v. Lockwood Pension Services, Inc.*, 653 F. Supp. 2d 354, 389 (S.D.N.Y. 2009) (quoting *Clemens Realty, LLC v. N.Y.C. Dep't of Educ.*, 850 N.Y.S.2d 172, 173 (2d Dep't 2008)); *see also Bayerische Landesbank*, 692 F.3d at 58; *Clark–Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.").  Indeed, even allegations that a breach of contract occurred as a result of gross negligence does not give rise to a duty independent of the contractual relationship or supply a basis to seek recovery in tort.  *See Abacus Fed. Sav. Bank v. ADT Sec. Services, Inc.*, 18 N.Y.3d 675, 684–85 (2012).  Where "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative."  *Bayerische Landesbank*,

692 F.3d at 58.  "[W]here plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."  *Sommer*, 79 N.Y.2d at 552.

Plaintiffs' attempt to expand Natixis's duties by citing EMTA recommendations does not broaden those duties.  First, even as described by plaintiffs, EMTA's recommendations do not speak to more than a member's obligation to assure delivery of the warrants to its clients, an obligation that already existed here pursuant to the contract.  Thus, even if arranging such delivery was "required by industry practice and recommended by the industry association, EMTA, of which Natixis was a member," so to impose a legal duty on an industry member, *see* Compl. ¶ 48; *see also* Declaration of Martin Domb ("Domb Decl.") Ex. A (Natixis a "buy-side member" of EMTA), that duty would do no more than overlap with the contract claim.

More fundamentally, as a matter of law, a trade association's recommendations do not create new legal duties for its members.  Under New York law, "[a]lthough noncompliance with such a customary practice or industry standard may be evidence of negligence, the failure to abide by guidelines or recommendations that are not generally-accepted standards in an industry will not suffice to raise an issue of fact as to a defendant's negligence."  *Diaz v. N.Y. Downtown Hosp.*, 287 A.D.2d 357, 358 (1st Dep't 2001), *aff'd*, 99 N.Y.2d 542 (2002).  Indeed, even by their own terms, EMTA recommendations are advisory.  Levine Decl. Ex. C ("EMTA is recommending that . . . ."); Domb Decl. Ex. E ("EMTA *invites* all market participants with outstanding positions in these instruments to join in this effort to reconcile trading positions . . . ." (emphasis added)); *cf. Diaz*, 287 A.D.2d at 358 ("the guidelines are couched in advisory terms" and include qualifier "when possible").

Because plaintiffs' negligence claim rests at most upon a duty (to deliver the warrants) that is coextensive with Natixis's contractual duty, the negligence claim must be dismissed, as duplicative of the contract claim.

### C. Good Faith and Fair Dealing Claim

Natixis seeks dismissal of plaintiffs' claim for breach of the duty of good faith and fair dealing, on the ground that it, too, is duplicative of the contract claim. The Complaint alleges that "[t]he contract between Plaintiffs and Natixis imposed on Natixis the duty of good faith and fair dealing that is implied in every contract. The duty comprised any promises which a reasonable person in the position of Plaintiffs would have been justified in understanding were included in the contracts." Compl. ¶ 38. Plaintiffs allege that "Natixis breached its duty of good faith and fair dealing by failing to deliver, or take adequate steps to deliver, the Warrants to Plaintiffs." *Id.* ¶ 42.

A covenant of good faith and fair dealing is implied in every contract governed under New York law. It "'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Atmosphere Scis., LLC v. Schneider Advanced Techs., Inc.*, No. 12 Civ. 3223 (SAS), 2012 WL 4240759, at *5 (S.D.N.Y. Sept. 19, 2012) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002)).

However, where the breach of that implied duty arises from a breach of the underlying contract, it does not create a freestanding cause of action. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). "New York law does not treat a breach of the covenant of good faith and fair dealing claim as one that is *separate* from a breach of contract claim where the claims are based on the same facts." *Giller v. Oracle USA, Inc.*, No. 12-895, 2013 WL

646153, at *2 (2d Cir. Feb. 22, 2013) (summary order) (emphasis in original); *see also ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").

Plaintiffs urge that these claims are not coextensive, asserting that the contract claim is based on the "simple fact of non-delivery of a security that Plaintiffs bought and paid for," while the good faith and fair dealing claim is based on Natixis's affirmatively wrongful conduct in "*refus[ing] to take adequate steps* . . . to deliver the Warrants to Plaintiffs or otherwise compensate them (by reconciling the trading position) for the failure of delivery." Pl. Br. 16–17 (emphasis in original). That distinction is illusory and unpersuasive. It is undisputed that Natixis did not deliver the warrants. If Natixis's failure to deliver was a breach of contract, its failure to take adequate steps to perform that contractual obligation cannot be said to give rise to a separate cause of action, any more than in any other case of contract breach. Both asserted causes of action turn on the failure to deliver the warrants. And both seek identical relief. *Compare* Compl. ¶ 36, *with id.* ¶ 43. Accordingly, the claim for breach of the duty of good faith and fair dealing is dismissed as redundant of the contract claim.

### D. Statute of Limitations

Natixis next argues that the contract claims as to one of the five transactions, encompassing 5,000 of the 46,000 warrants at issue, is barred by the six-year statute of limitations.[7] Def. Br. 21–22.

---

[7] The Court does not address Natixis's separate argument that plaintiffs' negligence claim is barred by the three-year statute of limitations, because the Court has already dismissed the negligence claim on other grounds.

Under New York law, contract claims are subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. § 213. The warrant transactions took place at some time before November 2002. *See* Compl. ¶ 13. In August 2007, the parties entered into a tolling agreement, but it (and its successive renewal agreements) expressly encompasses only four transactions. Compl. ¶ 24; Levine Decl. Ex. F. The question, therefore, is when the contract claim accrued.

Plaintiffs contend that their contract claim did not accrue "until 2007 at the earliest, and most likely until December 2011." Pl. Br. 17. This is because, plaintiffs argue,

> Natixis (a) repeatedly promised Plaintiffs that it would deliver the Warrants; (b) continued to send Plaintiffs statements evidencing Natixis's obligation to deliver the Warrants; and (c) continued in place its instructions to the clearinghouse to deliver the Warrants to Plaintiffs (Compl. ¶¶ 17–19). It was not until December 22, 2011, that Natixis cancelled such instructions to the clearinghouse, thereby, for the first time, repudiating its obligation to deliver the Warrants (id. ¶ 19).

Pl. Br. 17–18. In effect, plaintiffs appear to argue, the parties implicitly agreed to an extension of time under which Natixis would have additional time to perform the contract, *i.e.*, to deliver the warrants. Thus, plaintiffs posit, Natixis's breach of its duty to deliver did not occur until plaintiffs insisted on performance. *See* Pl. Br. 18–19 (citing *Sergros Caracas de Liberty Mut., S.A. v. Goldman, Sachs & Co.*, 502 F. Supp. 2d 183, 188 (D. Mass. 2007) (applying New York law)).

The Complaint, however, does not anywhere allege any such superseding agreement between the parties to delay the delivery of the warrants. Nor does the Complaint plausibly allege that plaintiffs waived their right to a timely delivery and granted Natixis an extension of time: "The intent to waive 'must be unmistakably manifested, and is not to be inferred from a doubtful or unequivocal act.'" *Sergros Caracas de Liberty Mut.*, 502 F. Supp. 2d at 188 (quoting *Ess & Vee Acoustical & Lathing Contractors, Inc. v. Prato Verde, Inc.*, 268 A.D.2d 332, 332 (1st Dep't 2000)). The Complaint does not allege any facts of this nature. To the contrary, it alleges

14

merely that Natixis reiterated its obligation to produce the warrants: "Natixis has admitted on several occasions that Plaintiffs are entitled to have the 46,000 missing Warrants (and all the accrued corresponding Payment Rights, which to date exceed $10 million)." Compl. ¶ 17. This allegation is insufficient to plead a waiver or an extension of the due date of the delivery obligation.

Barring such a waiver, under New York law, "in contract actions, the cause of action accrues and the statute of limitations commences at breach even though no damage occurs until later and the 'injured party may be ignorant of the existence of the wrong or injury.'" *T & N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 60 (2d Cir. 1994) (quoting *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 403 (1993)). The date of breach is therefore the date on which Natixis failed to deliver the warrants. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 197 (2d Cir. 2003) ("Based on clear New York law, the proper valuation for the warrants was the date of the breach—the date [defendant] failed to deliver the warrants."); *Waxman v. Envipco Pickup & Processing Servs., Inc.*, No. 02 Civ. 10132 (GEL), 2006 WL 1788964, at *4 (S.D.N.Y. June 28, 2006) (holding that the date of breach was the date of closing where "defendants do not assert any other valid reason why delivery of the receipts was delayed past the date of the closing"); *Sergros Caracas de Liberty Mut.*, 502 F. Supp. 2d at 188 ("When, however, there is no extension of the date of performance, breach occurs on the settlement date.").

Although the parties' submissions and the Customer Agreements do not state precisely when Natixis's duty to deliver the 5,000 warrants arose, it is clear, and the parties agree, that it was before November 2002. *See* Compl. ¶ 13. Because that transaction was not covered by the tolling agreements, it is barred by the statute of limitations.

15

### E. Motion to Strike Damages

Natixis, finally, moves to strike, under Federal Rule of Civil Procedure 12(f), any demand for damages in excess of the value of the Warrants at the time of the alleged breach. Def. Br. 23–25. "Motions to strike are generally disfavored and if there are questions of fact or disputed questions of law, the motion should be denied." *Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05 Civ. 5390 (NRB), 2005 WL 2923519, at *1 (S.D.N.Y. Nov. 2, 2005) (*quoting Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 938 (2d Cir. 1984)). "Where a demand for damages is not recoverable as a matter of law, however, it may be stricken." *Id.* (citing *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d. 363, 383 (S.D.N.Y. 2004)).

"It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384 (2d Cir. 2006). It is also well-established that contract damages "should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *Id.*; *see also Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 145 (1971) ("The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach. . . . The rule is precisely the same when the breach of contract is nondelivery of shares of stock." (citations omitted)).

For the reasons stated above, the moment of the breach of Natixis's duty to deliver the warrants was the moment that delivery was required. The Second Circuit has squarely held that "[m]easuring contract damages by the value of the item at the time of the breach is eminently sensible and actually takes expected lost future profits into account." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (citation omitted). Moreover, "New York courts have rejected awards based on what the actual economic conditions and performance were in

16

light of hindsight." *Id.* This is true even in cases of non-delivery of stock. *See id.*; *see also Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("The damage award resulting from a breach of an agreement to purchase securities is the difference between the contract price and the fair market value of the asset at the time of breach, not the difference between the contract price and the value of the shares sometime subsequent to the breach."). Accordingly, plaintiffs' claim for damages equal to the *current* market value of the warrants is unavailable as a matter of law. Natixis's motion to strike that theory of damages is granted.

In the event that plaintiffs establish liability, damages will consist of the value of the warrants as of the date that Natixis was obligated to deliver them to plaintiffs, *i.e.*, the date or dates of the breach. The Court expresses no opinion as to the method or methods by which such value is to be determined. Although the confirmations with respect to the warrants assigned them a nominal value of $0, on the record before the Court, those documents are not necessarily determinative of the actual value of the warrants, on that date, let alone on the date or dates of the breach. Assuming that there is evidence (including potentially expert testimony) that could support different valuations, the issue of the value of the warrants as of the date or dates of the breach will be a question for the jury.

However, the Court denies Natixis's motion to strike plaintiffs' claim for damages based on the total amounts paid to date in payment rights under the Warrants. It is premature to do so. Pending further factual development, the Court is not in position to determine whether such payment rights are properly considered part of the value of the warrants as of the date when they were required to be delivered.

## CONCLUSION

For the reasons stated above, Natixis's motion to dismiss the plaintiff's Complaint for failure to state a claim is granted in part and denied in part. Claim Two (good faith and fair dealing) and Claim Three (negligence) of plaintiffs' Complaint are dismissed. The Court also strikes plaintiffs' theory of damages to the extent it seeks recovery of damages equal to the current market value of the warrants. The Clerk of Court is directed to terminate the motion at docket number 9.

A conference in this case will be held on August 1, 2013, at 2:30 p.m. (This conference has been rescheduled from August 5, 2013.) In order to accommodate this new date, any pre-motion letters will be due 10 days after the close of fact discovery on July 15, 2013.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 11, 2013
New York, New York